IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELAINA M.,[1] | ) |
| | ) |
| Plaintiff, | ) No. 22 C 6279 |
| | ) |
| v. | ) Magistrate Judge Jeffrey Cole |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i), 423, almost four and a half years ago in March of 2019. (Administrative Record (R.) 168-69). She claimed that she had been disabled since December 26, 2016 (R. 168) – amended over a year later to February 26, 2018 (R. 192) – due to chronic pain syndrome and fibromyalgia. (R. 194). Over the next three and a half years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on November 10, 2022, and the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on December 5, 2022. [Dkt. ##6, 8]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

I.

Plaintiff was born June 30,1984 (R. 168), and so, was just 32 years old when she initially claimed she was no longer able to work -- or approaching 34 based on her amended onset date. After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: "lateral epicondylitis, right elbow; fibromyalgia; chronic pain syndrome; migraine headaches" (R. 18). The ALJ said the plaintiff's medically determinable mental impairment of obesity and her impairment of depression, were not severe impairments, and that her depression cause no more than mild limitations in any area of functioning. (R. 19). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered the requirements for the Listings 1.02B, 11.14, and 14.09D. (R. 20-21).

The ALJ then determined that the plaintiff had the residual functional capacity ("RFC") to light work with a number of additional limitations:

> occasional climbing ramps and stairs, but never ladders, ropes, and scaffolds; frequent stooping; occasional balancing, kneeling, and crouching; never crawling; avoiding moving mechanical parts and unprotected heights; occasional reaching, handling, and fingering bilaterally; and she can work at a consistent pace throughout the workday but cannot perform production-rate pace work where tasks must be performed quickly.

(R. 21). The ALJ then summarized the plaintiff's allegations, noting that she alleged chronic pain limited her ability to sit, stand, walk, and use her hands, along with severe migraines. The ALJ related the plaintiff's testimony that she spent most of every day resting, and did no more with her three children – aged 16, 9, and 1 at the time of plaintiff's initial alleged onset – than instruct them on getting ready for school. She had trouble dressing and bathing and did no household chores.

Her eldest child helped around the house. She said she could stand for no more than ten minutes and could only use her hands for three minutes at a time. Her migraines came three times a week and lasted an hour. The ALJ thought her claimed extreme limitations were inconsistent with the basic demands of her life and caring for her children, and noted the plaintiff allowed that she does not "feel like" doing chores and was able to drive and shop. The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms cannot reasonably be accepted as consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 21-22).

The ALJ then summarized the medical evidence, noting that the plaintiff had surgery on her right elbow for lateral epicondylitis release prior to the amended alleged onset date and recovered well from surgery. Thereafter she had some recurrent pain and tests were positive for tennis elbow. Range of motion was full, and, as examination findings were mild, treatment was conservative. Plaintiff also reported to doctors a long history of musculoskeletal pain due to having multiple automobile accidents over the years. She was referred to a rheumatologist, but failed to follow up. (R. 22).

At examinations in February 2018, April 2019, and December 2019, tender points established a diagnosis of fibromyalgia. In December 2018, the doctor noted decreased range of motion throughout the spine and in the right shoulder, but intact sensation and strength in all extremities. Plaintiff said physical therapy had been successful in reducing her pain. In 2019, plaintiff the claimant reported report back pain, arm pain, and leg pain, which she describes as a dull and achy pain." She stopped taking Cymbalta in June 2019. Topamax was added for her

headache complaints. Through early 2020, her hands and arms were giving her the most trouble, especially when she woke up. She was not taking her medication regularly. In January 2020, she reported "tolerable" pain at 5/10; she was taking Norco on her worst days. (R. 24).

The ALJ went on to note that the plaintiff established care with a neurologist in June 2019, and was prescribed Topamax for her reported twice-weekly migraine headaches. She reported improvement with marijuana use and was in no distress in an examination. At a January 2020 visit, plaintiff said her headaches came one or two times per month. At an April 2020 visit, after she had requested a hearing on her benefits claim, she reported that her headaches had increased and had become worse in the past three weeks. The ALJ pointed out that the plaintiff testified they were of greater frequency at her hearing. (R. 24).

The ALJ then moved on to the medical opinions in the record. She found the opinions from the state agency reviewing physicians that plaintiff could perform light work with occasional postural activity, no manipulative limitations, and limitations on environmental exposure to cold, heat, humidity, and wetness not persuasive because they were poorly supported and did not take into account manipulative limitations, which were plaintiff's chief complaint. Additionally, there was no medical evidence as to problems with cold, heat, humidity, or vibration. (R. 24). The ALJ found the opinion from plaintiff's surgeon, Dr. Kung, that she could not lift greater than five pounds and could perform no repetitive gripping, pushing, or pulling with her right hand not persuasive because it was not consistent with his own treatment notes which indicated a full range of motion, strength, and sensation in the right upper extremity and merely had some residual tenderness and a ]"positive resistive tennis elbow test." (R. 24). Finally, the ALJ rejected the opinion from plaintiff's treating provider, Dr. Slavick, that she could neither work full-time nor

4

part-time, but could frequently sit but could only occasionally stand, walk, climb stairs, stoop, reach overhead, handle, and finger; and could never climb ladders, balance, kneel, crawl, reach desk level, keyboard, or lift/carry with both hands up to 20 pounds. She explained that it conflicted with the doctor's statement that plaintiff had the capacity to work from home, and his treatment notes that plaintiff was neurologically intact and in no distress with motor examination of 5/5 in all extremities; normal reflexes; normal gait with no muscle atrophy; and experiencing only mild pain. (R. 25).

The ALJ then relied on the testimony of the vocational expert to find that, while plaintiff could no longer perform his past relevant work, there were other jobs existing in significant numbers in the national economy that plaintiff could perform. Examples were: investigator, dealer accounts (DOT # 241.367-038; approximately 6,000 jobs in the national economy); usher (DOT # 344.677-014; approximately 5,000 jobs in the national economy); and page (DOT #353.367-022; approximately 6,000 jobs in the national economy). (R. 26-27). Accordingly, the ALJ found that the plaintiff was not disabled and not entitled to benefits under the Act. (R. 27).

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The "substantial evidence" standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Milhem v. Kijakazi*, 52 F.4th 688, 694 (7th Cir. 2022); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept

5

as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). To determine whether "substantial evidence" exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *see also see also Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)(". . . the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."); *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.").

But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor‑Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The Seventh Circuit has explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to

support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 (". . . the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis."); *but see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash.[2] But, the Seventh Circuit has also called this requirement "lax."  *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).  All ALJs really need to do is "minimally

---

[2] By way of example, in the Seventh Circuit's recent ruling in *Jarnutowski*, 48 F.4th 769, two judges on the panel felt the ALJ had not adequately explained aspects of her reasoning while a third judge, dissenting, thought she did. The Magistrate Judge who reviewed the ALJ's decision at the district court level also felt the ALJ had adequately explained her reasoning. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1, 2021).

articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[3] The ALJ has done enough here.

---

[3] Prior to *Sarchet*'s "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).
> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do....This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Stephens*, 766 F.2d at 287 (citations omitted). Much more recently, the Seventh Circuit explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

### III.

The plaintiff raises two arguments in favor of overturning the ALJ's decision. First, she contends that the ALJ failed to accord adequate weight to the opinions of her treating physicians. And, second, she complains that the ALJ made an improper credibility determination and did not fairly assess her reports of pain or her other symptoms under SSR 12-2p. Any other arguments she might have raised are deemed waived. *Milhem v. Kijakazi*, 52 F.4th 688, 693 (7th Cir. 2022); *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020).

### A.

The plaintiff feels the ALJ gave short shrift to the opinions of two of her treating physicians, Dr. Slavick and Dr. Kung. Plaintiff gets off on the wrong foot by claiming the ALJ merely said: "The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." [Dkt. # 12, at 8-9]. That's just wrong; as even the plaintiff concedes right after that, the ALJ assessed both doctors' opinions compared to their examination findings and the medical record. There is no requirement that an ALJ mention each factor, *see Elder*, 529 F.3d at 415–16, and, indeed, the regulations specifically state that ALJs need only discuss supportability and consistency. 20 C.F.R. § 404.1520c(b); *Bakke v. Kijakazi*, 62 F.4th 1061, 1069 (7th Cir. 2023); *Albert*, 34 F.4th at 614; *Grotts*, 27 F.4th at 1277.

First, there is Dr. Slavick. As the ALJ noted, Dr. Slavick didn't think plaintiff could do much of anything. (R. 359-61). She could not work full-time or part-time. She could sit for up to two thirds of a day, could only stand, walk, climb stairs, stoop, reach overhead, handle, and finger for up to one third of a day. She could never reach at desk level. (R. 359-61). The ALJ rejected

9

the doctor's extreme limitations because they were internally inconsistent and unsupported by the medical evidence, specifically the doctor's own treatment notes. Both are entirely valid reasons for dismissing a physician's opinion. *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022); *Zoch*, 981 F.3d at 602, and both of the ALJ's reasons hold up easily under scrutiny.

The doctor said plaintiff was unable to work at all, or even reach a desk, but somehow could work from home. That's certainly contradictory. But, more importantly, the ALJ also said the doctor's limitations were unsupported by his treatment notes. They certainly aren't. The doctor's treatment notes don't paint nearly as dire a picture of the plaintiff as his opinion:

> February 27, 2018– no joint pain or muscle pain, strength 5/5 in all extremities, reflexes normal, gait normal, tenderness to palpation in all four limbs, neurological exam intact to 9 elements (R. 285-86)
>
> May 1, 2018– no joint pain or muscle pain, strength 5/5 in all extremities, reflexes normal, gait normal, tenderness to palpation in all four limbs (R. 288-89)
>
> October 8, 2018– no joint pain or muscle pain, strength 5/5 in all extremities, reflexes normal, gait normal, tenderness to palpation in all four limbs, no muscle atrophy or loss of strength (R. 291-92)
>
> January 10, 2019– no joint pain or muscle pain, strength 5/5 in all extremities, reflexes normal, gait normal, tenderness to palpation in all four limbs, neurological exam intact to 9 elements, no muscle atrophy found (R. 294-95)
>
> February 21, 2019– reporting back pain, joint swelling, neck pain and stiffness; strength 5/5 in all extremities, reflexes normal, gait normal, trigger points in all four limbs (R. 298-99)
>
> June 19, 2019– extremities normal; sensation normal; strength 5/5 in all extremities; reflexes normal; gait normal; intact neurological exam except for tenderness to palpation in arms and legs; no muscle atrophy; depressed affect. (R. 393).
>
> August 22, 2019– extremities normal; sensation normal; strength 5/5 in all extremities; reflexes normal; gait normal; multiple trigger points. (R. 401-02)

> October 23, 2019– extremities normal; sensation normal; strength 5/5 in all extremities; reflexes normal; gait normal; multiple trigger points; no muscle atrophy. (R. 410-11)
>
> January 30, 2020–extremities normal; sensation normal; strength 5/5 in all extremities; reflexes normal; gait normal; multiple tender points; no muscle atrophy or fasciculations; mild pain with movement. (R. 441)
>
> April 29, 2020– extremities normal; sensation normal; strength 5/5 in all extremities; reflexes normal; gait normal (R. 448-49)

The overarching theme of Dr. Slavick's notes is normal, normal, normal, normal. "No joint or muscle pain" was recorded at exams from February 2019 through January 2019. It's a huge leap to get from these types of treatment notes to plaintiff not being able to do any kind of work, full or part time. The ALJ figured – rightfully so, based on the record – that Dr. Slavick simply based his restrictions on plaintiff's subjective complaints rather than his medical findings. As such, his opinion has little value. *Prill*, 23 F.4th at 751 (". . . when a physician's opinion is based primarily upon a patient's subjective complaints, the ALJ may discount that opinion."); *Karr*, 989 F.3d at 512 (". . . an ALJ does not owe any deference to the portion of a treating physician's opinion based solely on the claimant's subjective complaints."); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) (". . .subjective complaints are the opposite of objective medical evidence and, while relevant, do not compel the ALJ to accept [a treating medical provider's] assessment").

Much the same can be said for Dr. Kung's opinion. He said the plaintiff was restricted from performing repetitive gripping or use of her right wrist/hand/fingers. (R. 460). Again, the ALJ found this to be out of proportion with the doctor's examination findings which, again, is an entirely valid rationale. *Prill*, 23 F.4th at 750; *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021). There are only a couple of treatment notes from Dr. Kung:

11

> August 27, 2018/ October 10, 2018– circulation intact; normal pulses; no edema; some tenderness over lateral epicondyle area; full range of motion; motor and sensation normal; wrist and hand normal with full range of motion, normal muscle strength and tone. (R. 376).
>
> September 24, 2018/October 24, 2018– circulation intact; normal pulses; no edema; some tenderness over lateral epicondyle area; full range of motion; motor and sensation normal; wrist and hand normal with full range of motion, normal muscle strength and tone. (R. 378).

Neither assessment indicates any limitations regarding plaintiff's use of her hands.

**B.**

Next, the plaintiff argues that the ALJ made an improper credibility determination under SSA 16-3p and did not fairly assess claimant's reports of pain or her other symptoms under SSR 12-2p. But, as long as an ALJ gives specific reasons supported by the record, the court cannot overturn a credibility determination unless the plaintiff can show it is patently wrong. *Grotts*, 27 F.4th at 1279; *Prill*, 23 F.4th at 748; *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021); *McHenry v. Berryhill*, 911 F.3d 866, 874 (7th Cir. 2018). That is a "heavy burden," *Milliken v. Astrue*, 397 F. App'x 218, 225 (7th Cir. 2010); *Turner v. Astrue*, 390 F. App'x 581, 587 (7th Cir. 2010), and the plaintiff has not met it here.

Essentially, the plaintiff testified that she is incapable of doing much of anything at all for more than several minutes at a time. She needs help from her older children getting her youngest dressed, cooking, sweeping, and cleaning. (R. 37-38). She can stand at the stove for ten minutes and stir a pot for two minutes. Then she has to rest. (R. 38-39). She can sweep for two or three minutes, then she has to rest. (R. 38). She can sit for about ten minutes before she has to lie down. (R. 50-51). She can walk a block and a half – or about ten minutes – before needing to rest. (R. 39, 40). If that's while she is shopping, she has to go sit in the car to rest. (R. 40).

12

Sometimes she doesn't feel like shopping and her son will do it. (R. 39). Getting her children ready for school, she has to sit down and rest every fifteen minutes. (R. 42). Three times a week, she gets migraines and has to lie down for over an hour. (R. 43).

As the regulations and the case law require, the ALJ did, indeed, provide specific reasons for disbelieving the plaintiff and tied them to the record. In the main, the ALJ discounted the plaintiff's allegations about the intensity of her pain because they were out of proportion with the medical record. While, as the plaintiff asserts that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence" [Dkt. #12, at 11(citing *Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016)], it is also the case that subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence. 42 U.S.C. § 423(d)(5)(A); *Grotts*, 27 F.4th at 1278; *Zoch*, 981 F.3d at 601. "[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005). Here, as already detailed, examinations findings, time and time again were normal. Full range of motion. Normal sensation. Normal motor strength. Normal muscle tone. No muscle atrophy. There was nothing in the examination record to suggest limitations that even approach the plaintiff's allegations of, essentially, complete debilitation.

As the regulations state, "evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms." 20 C.F.R. § 404.1529(c)(2). That goes for all cases,

13

including cases involving fibromyalgia. *See Gebauer v. Saul*, 801 F. App'x 404, 410 (7th Cir. 2020). Here, there is no such evidence. There is no sign of muscle atrophy or loss of muscle tone, which might be expected if a person has been standing for no more than ten or fifteen minutes at a time and spending much of every day lying down. *See, e.g. Diane E. v. Kijakazi*, No. 21 C 197, 2023 WL 2612722, at *7 (N.D. Ill. Mar. 23, 2023)("Given Plaintiff's testimony that she mostly lays in bed and rests all day, however, the ALJ did not commit reversible error in mentioning that Plaintiff routinely presented with full muscle strength and full range of motion."); *Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021)("Report after report indicates there is nothing affecting her gait, range of motion, or strength, whether that be something objective or subjective.").

As much as plaintiff's brief tends to argue otherwise, trigger points that establish fibromyalgia do not also establish entitlement to disability benefits. A diagnosis is not disability, *Schmidt*, 395 F.3d at 746; *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998), and that goes for a fibromyalgia diagnosis. *See Gebauer*, 801 F. App'x at 410 ("The Social Security Administration's guidance on evaluating fibromyalgia, see SSR 12-2P, limits only the evidence used to diagnose the disease as a medically determinable impairment (step two in the five-step analysis). It does not limit the evidence an ALJ can consider in evaluating the severity of fibromyalgia for purposes of determining a residual functioning capacity."); *Thompson v. Colvin*, 575 F. App'x 668, 677 (7th Cir. 2014)("That [fibromyalgia] diagnosis, however, does not entitle [plaintiff] to benefits."). What matters is the severity of the condition and how it limits plaintiff's capacity to work based on clinical and/or laboratory findings. *See Elder*, 529 F.3d at 415 ("... it makes no difference if [plaintiff] saw [his doctor] "every two-and-a-half months" ... what does matter is that [his doctor] did not confirm the severity of [plaintiff's impairment] with medical examinations or tests."); *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)("The issue in the case is not the existence of these various conditions of hers but their severity...."). The plaintiff seems to argue that her reports of pain are somehow self-corroborating. [Dkt. #12, at 10 ("Despite the consistent reporting of symptoms by [plaintiff] to her treating physicians, her submitted statements to the agency, and her testimony at hearing, . . . . the ALJ disregarded the severity of [plaintiff's] symptoms."), at 11 ("But in the present case there is more than ample evidence to support the [plaintiff's] complaints and limitations due to her experience of symptoms and prescribed medications as discussed above, including her reliance on her children to her children to take care of each other and their household.")], but she is responsible for establishing her limitations with

15

medical evidence. *Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022); *Gedatus*, 994 F.3d at 905; *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010). Her allegations and reports are "the opposite of objective medical evidence and, while relevant, do not compel the ALJ to accept" her version as to the extent of her limitations. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010).

The ALJ provided good reasons for finding plaintiff's complaints were exaggerated, and tied those reasons to the evidence in the record. That's all she was required to do: build a logical bridge between the evidence and her conclusions. Again, cases involving fibromyalgia do not demand anything different;

> Since pain is subjective and affects people in different ways, it is difficult to determine how much pain is present and how great its effects are. Fibromyalgia can have a wide range of effects. Almost any conclusion an ALJ reaches in such situations may be inconsistent with some evidence in the record and consistent with other evidence. This is where the substantial-evidence standard of review matters.

*Kolar v. Berryhill*, 695 Fed. Appx. 161, 162 (7th Cir. 2017).

No one, including the ALJ, is saying the plaintiff does not experience pain; but being unable to work without pain does not entitle someone to disability benefits. *See, e.g., Castile*, 617 F.3d at 929 (affirming ALJ's decision noting that "[d]isability requires more than mere inability to work without pain."); *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989)("Even if [plaintiff] did experience some discomfort, this alone does not establish disability."); *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir. 1986) ("disability requires more than mere inability to work without pain"). As both the ALJ, and the Seventh Circuit have pointed out, millions of people work with chronic pain. *Kolar*, 695 F. App'x at 161; (R. 45 (". . . people worked 40 hours a week for years and they have some fatigue; they have some pain and they're tired, so I'm trying to get an idea, what is it about your pain and fatigue that keeps you from working?").

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. # 17] is granted, and the ALJ's decision is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 7/24/23